[Cite as *In re T.S.*, 2012-Ohio-2401.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                :          JUDGES:
                                 :          Hon. W. Scott Gwin, P.J.
T.S., K.S., M.S., AND B.S.       :          Hon. Sheila G. Farmer, J.
                                 :          Hon. Julie A. Edwards, J.
                                 :
                                 :          Case No. 11AP110046
                                 :
                                 :          OPINION


CHARACTER OF PROCEEDING:                    Appeal from the Court of Common
                                            Pleas, Juvenile Division, Case No.
                                            10JN00227


JUDGMENT:                                   Affirmed


DATE OF JUDGMENT:                           May 30, 2012


APPEARANCES:

For Appellant                               For Appellee

STEVEN A. STICKLES                          DAVID W. HAVERFIELD
500 Market Street                           389 16th Street, SW
Suite #10                                   New Philadelphia, OH  44663
Steubenville, OH  43952

*Farmer, J.*

{¶1} On May 17, 2010, appellee, the Tuscarawas County Department of Job and Family Services, filed a complaint for temporary custody of T.S. born April 4, 2003, K.S. born March 23, 2004, M.S. born May 17, 2005, and B.S. born April 13, 2009, alleging the children to be neglected and dependent. Mother is appellant, Stacey Jones; father is Thomas Smith, Jr. On same date, the trial court placed the children in appellee's temporary custody. By judgment entry filed July 14, 2010, the trial court found the children to be neglected and dependent and ordered that the children shall remain in appellee's temporary custody. Visitations between appellant and the children were suspended on December 6, 2010.

{¶2} On April 6, 2011 appellee filed a motion to modify prior disposition, requesting permanent custody of the children. On May 6, 2011, appellant filed a motion to reinstate visitation with the children. A hearing on visitation was held on May 24, 2011. By judgment entry filed June 6, 2011, the trial court dismissed the motion. Findings of fact and conclusions of law were filed on August 17, 2011.

{¶3} Hearings on the permanent custody request were held on September 29, and October 6 and 7, 2011. By judgment entry filed October 31, 2011, the trial court granted permanent custody of the children to appellee.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶5} "THE TRIAL COURT ERRED IN NOT REINSTATING APPELLANT-MOTHER'S VISITATION WITH HER MINOR CHILDREN."

II

{¶6}  "THE TUSCARAWAS COUNTY JOB & FAMILY SERVICES (TCJFS) FAILED TO TAKE REASONABLE EFFORTS TO PREVENT THE REMOVAL OF THE CHILDREN FROM THE CHILDREN'S HOME, TO ELIMINATE THE CONTINUED REMOVAL OF THE CHILDREN FROM THEIR HOME, OR TO MAKE IT POSSIBLE FOR THE CHILDREN TO RETURN SAFELY HOME AS MANDATED BY O.R.C. §2151.419."

III

{¶7}  "THE TRIAL COURT'S DECISION TERMINATING THE PARENTAL RIGHTS OF THE APPELLANT-MOTHER WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶8}  "THE TRIAL COURT COMMITTED PLAIN ERROR IN NOT RETURNING THE MINOR CHILD B.S. TO THE APPELLANT-MOTHER AS THERE WAS NO EVIDENCE INTRODUCED THAT IT WAS IN HIS BEST INTEREST TO REMAIN IN THE CARE OF TCJFS."

V

{¶9}  "THE MOTHER-APPELLANT WAS DENIED HER 6TH AMENDMENT RIGHT OF CONFRONTATION OF WITNESSES BECAUSE OF THE REPEATED VOLUMINOUS AMOUNTS OF HEARSAY TESTIMONY OFFERED THROUGHOUT THIS MATTER."

II, III

{¶10} Appellant claims the trial court erred in granting appellee permanent custody of T.S., K.S., and M.S. Specifically, appellant claims appellee did not use reasonable efforts to reunite appellant with her children and the trial court's decision was not supported by clear and convincing evidence and was against the manifest weight of the evidence. We disagree.

{¶11} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 1993-Ohio-9.

{¶12} Pursuant to R.C. 2151.419(A)(1), "the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child" must have "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts."

{¶13} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:

{¶14} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶15} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶16} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or

by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶17} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶18} "(16) Any other factor the court considers relevant."

{¶19} R.C. 2151.414(B)(1) enables a trial court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.

{¶20} R.C. 2151.414(D)(1) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:

{¶21} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶22} "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶23} "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period***;

{¶24} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶25} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶26} In its judgment entry filed October 31, 2011, the trial court found the following in part:

{¶27} "31. Defense Counsel has presented a very skilled defense for Ms. Jones and he has been diligent in revealing deficits in the way TCJFS has managed this case. He has alleged that the suspension of visits between these children and their mother has sabotaged their reunification. He also alleges that a delay in providing the appropriate therapists for these children has hindered their progress.

{¶28} "32. Therapists for the children have not expressed this concern and have not indicated that any of these management decisions have affected the prognosis of these children.

{¶29} "33. Had the circumstances of this case been less severe, defense counsel's arguments would have more merit. As things are, the condition of these children is so extreme that perfect management of this case by TCJFS would have not altered the outcome."

{¶30} Appellant argues reasonable efforts were not made because an amended case plan was not filed to reflect the children's final diagnoses and personality disorders, and appellee never meant for reunification.

{¶31} A motion for permanent custody was not made until after the final and definitive diagnoses by psychology assistant Aimee Thomas, Ph.D., clinician Margaret DeLillo-Storey, Ph.D., clinical counselor Debra Pittak, therapist Kurtis Letner, and psychologist Anita Exley, Ph.d. Appellant argues the professionals were not told that her case was a reunification plan and therefore their analyses were predicated on permanent custody issues. This proposition was rejected by the professionals specifically, Dr. DeLillo-Storey, who was highlighted in appellant's brief. T. at 98-99; Appellant's Brief at 15-16. Pathway Counseling was the first mental health program to assess the children. T. at 312. Pathway found there was a need for more intense specialized evaluation. T. at 314. This decision was not appellee's, but the culmination of understanding the seriousness of the mental health issues presented. T. at 314-315. We do not find any evidence that reasonable efforts were not made. There were additional evaluations and referrals of the children by various therapists at Northeast Ohio Behavioral Health and T.S. was placed in a residential treatment facility. T. at 66, 145.

{¶32} Appellant also argues the trial court's decision was not supported by clear and convincing evidence. In its judgment entry filed October 31, 2011, the trial court detailed thirty findings and after a review of the record by this court, we find them to be basically unchallenged and supported by the testimony and the specific mental health evaluations. State's Exhibit 1; Defendant's Exhibit A.

{¶33} In reviewing the testimony as a whole, there are some facts that are relevant to the final decision. T.S., K.S., and M.S. have all been diagnosed with Post Traumatic Stress Disorder and Reactive Attachment Disorder. T. at 9, 15, 17. The Post Traumatic Stress Disorder was brought about by the children continuously witnessing extreme acts of domestic violence between the parents as well as the parents' alcoholism. T. at 10-11, 16, 18-19. Dr. Thomas explained Reactive Attachment Disorder as follows:

{¶34} "A. Um, it's a disorder that stems from early childhood, um, abuse, trauma and neglect that occurs typically within the first three years of life. Uh, when children are grossly neglected, uh, they're not fed, they're not nurtured, they're not held, if they're exposed to traumatic incidents such as domestic violence. Um, it doesn't have to be a single event but more a pattern of events, um, that really impact a child's ability to feel safe, uh, and nurtured within the first three years of life." T. at 12.

{¶35} The disorder can manifest itself via "anger management problems, oppositional behaviors, uh, very superficial, charming. They can apologize but they don't make any sincere changes. Um, no conscience, no remorse, um…" T. at 13. There is "more of a lack of regard for the rights and feelings of others. This is kind of a budding sociopath or antisocial personality disorder." Id. [T]here isn't a strong connection with other people. When children don't form attachments to other people, they don't care if they hurt other people, there's not that bond, there's not that connection." Id.

{¶36} As a result of the various diagnoses, it was recommended that T.S. be separated from the siblings and placed in a residential treatment facility. T. at 145, 151.

At the present time, Mr. Letner, T.S.'s therapist at the residential treatment facility, opined T.S. could not thrive outside the facility. T. at 152-153, 171. The children "need a lot of close supervision, extreme close supervision." T. at 320.

{¶37} The portrait painted by the mental health professionals is of three very troubled children. The cause of their problems is from a lack of parenting/bonding and not of their own fault. T. at 369. T.S., K.S., and M.S., who are now nine, eight, and seven, respectively, face troubled lives and cannot be kept together.

{¶38} Appellant now tacitly accepts that she is responsible for the present situation, but argues further counseling of her and the reinstallation of visitation will cure the problems. T at 309, 613, 616, 623-624, 630. Her lack of understanding is evident when she told the children's foster mother "she was laying with [M.S.] in bed one night and [M.S.] said, you know, I got to go to my own room before dad comes home drunk and mad." T. at 222. Appellant was evidently surprised by this. In discussions with the professionals, appellant consistently denied that the children ever witnessed the domestic violence in the home. T. at 23, 310.

{¶39} Appellant's own portrait is of a dependent person with alcohol problems who has steadfastly placed her interests over the interests of her children. Everything that has happened is the fault of her estranged husband, appellee and its caseworkers, and the lack of visitations.

{¶40} The prognoses of T.S., K.S., and M.S. are the dimmest this writer has witnessed in permanent custody cases over the past nineteen years. The children must be separated for their own welfare which completely mitigates against reunification.

{¶41} Upon review, we find sufficient clear and convincing evidence was presented to support the trial court's decision to grant appellee permanent custody of T.S., K.S., and M.S.

{¶42} Assignments of Error II and III are denied.

IV

{¶43} Appellant claims the trial court erred in awarding permanent custody of B.S. to appellee. We disagree.

{¶44} Specifically, appellant argues the trial court should have "severed" the hearing of B.S. from his siblings' hearings. Appellant also argues the trial court erred in concluding her environment was the same on October 31, 2011 as it was on May 17, 2010 when the children were removed from her custody.

{¶45} Appellant correctly points out that she has completed her case plan and has done all that was required of her. See, October 31, 2011 Findings Nos. 8. It is her position that evidence was not presented to establish that B.S. was harmed to the extent of his siblings, and he does not demonstrate any of the personality disorders that they demonstrate.

{¶46} In its judgment entry filed October 31, 2011, the trial court addressed the permanent custody of B.S. as follows:

{¶47} "30. B.S. is the youngest child in this family and was removed at a very early age. He does not demonstrate any of the horrendous trauma or behavior of the other children. This is no reason to return him to the same environment that created the psychiatric pathology in his siblings.

{¶48} "34. Although Ms. Jones has made some personal progress, she still shows many signs of the same personality issues that will likely never resolve themselves. Her own personal progress is a far cry from being able to meet the needs of these children. As this is the case with Ms. Jones, returning B.S. to her care would put this child at substantial risk."

{¶49} The professionals opined that B.S. needs a safe environment. T. at 32-33, 55-56. The caseworker is concerned that appellant is still involved with her estranged husband. T. at 307-308. As discussed supra, the Reactive Attachment Disorder is the result of a lack of parenting/bonding. B.S. has been apart from appellant since he was fifteen months old. Over a year and a quarter of nurturing by the foster parents has placed him in a positive position. Ms. Pittak, who works with children with Reactive Attachment Disorder, explained it would not make any sense to send B.S. back to the same environment because "if you want to right (sic) the script for producing reactive attachment in a child, that's what you would do. The child is showing a bond and attachment to the, a care giver at this point, uh, breaking that can, can spur on attachment disorders, or issues." T. at 117.

{¶50} The trial court reviewed appellant's entire lifestyle and resistance to suggestions to remain unattached as she has a new boyfriend who she wishes to mold into a father figure or help mate. The trial court concluded appellant has done nothing substantive to change her lifestyle. The three older children have severely suffered from appellant's lack of parenting skills. We concur that to experiment with a three year old regarding appellant's claim that she has changed would not be appropriate.

{¶51} Upon review, we find the trial court did not err in granting permanent custody of B.S. to appellee.

{¶52} Assignment of Error IV is denied.

V

{¶53} Appellant claims her rights of due process were violated by the "voluminous" amounts of hearsay. We disagree.

{¶54} The assignment of error is silent as to any specific instances of complained of hearsay in violation of App.R. 16(A)(3) which states the following:

{¶55} "The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

{¶56} "(3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected."

{¶57} Assignment of Error V is denied.

I

{¶58} Appellant claims the trial court erred in failing to reinstall visitation. We disagree.

{¶59} Decisions on visitation are within the trial court's sound discretion. *In re Whaley* (1993), 86 Ohio App.3d 304. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217.

{¶60} Visitation was terminated at the request of Northeast Ohio Behavioral Health because of the extreme reaction by the children after contact with appellant. T.

at 11, 15-16.  The children exhibited extreme reactions to visitations by acting out, gorging, vomiting, and defecating.  T. at 11, 15, 204, 213-215.  M.S. reported that appellant "told her not to talk about her or anything."  T. at 35.  Essentially appellant was teaching the children to keep secrets which would negatively impact their therapy sessions.  Id.

{¶61}  The trial court terminated visitation on December 6, 2010 and the motion for permanent custody was filed on April 6, 2011.  Appellant filed her motion to re-instate visitation on May 6, 2011.

{¶62}  We find an extra month of visitation would have had no substantial effect on the outcome of the case based on our decisions in Assignments of Error II, III, and IV.

{¶63}  Assignment of Error I is denied.

{¶64}  The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Edwards, J. concur.


s/ Sheila G. Farmer_____

s/ W. Scott Gwin_____

s/ Julie A. Edwards_____
                        JUDGES

SGF/sg 404

[Cite as *In re T.S.*, 2012-Ohio-2401.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| T.S., K.S., M.S., AND B.S. | : | JUDGMENT ENTRY |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | CASE NO. 11AP110046 |

      For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is affirmed. Costs to appellant.


s/ Sheila G. Farmer_____


s/ W. Scott Gwin_____


s/ Julie A. Edwards_____
                JUDGES